UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NINA LEONE,<br>　　Plaintiff,<br><br>v.<br><br>LESLEY UNIVERSITY and<br>KATHLEEN FARRELL,<br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 21-10816 |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff Nina Leone brings this action for damages against her former employer, Lesley University, and her former supervisor, Kathleen Farrell (collectively referred to as the "Defendants") for handicap/disability (hereinafter "disability") discrimination and retaliation in violation of M.G.L. c. 151B and the American with Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA"), for interference with protected rights in violation of M.G.L. c. 151B, and for retaliation for exercising or attempting to exercise rights protected under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., ("FMLA"), all of which culminated in Plaintiff's unlawful termination from employment.

### PARTIES

2. Plaintiff Nina Leone ("Leone") resides in Essex County, Massachusetts.

3. At all times relevant, as set forth below, Leone was a qualified disabled person within the meaning of M.G.L. c. 151B and the ADA. Leone is an individual living with disabilities. She is diagnosed with Migraine, Vertigo, and Anxiety Disorder. Leone's

1

disabilities limit one or more of her major life activities, including without limitation concentrating, reading, writing, working, and driving.

4. When Leone experiences an episode with her migraine disability, it often starts with a flashing light in her eye which turns into a pounding migraine headache that is debilitating. When Leone experiences an episode of her vertigo disability, she experiences increasing dizziness and loses balance. In both situations, Leone is not able to engage in any motion. She must take medication, lay down, and try to sleep it off. She cannot eat or she will vomit. She cannot drive or ride in any transportation. She cannot lift herself up, concentrate, read, write, or use the computer. While sometimes Leone recovers from a migraine and/or vertigo episode within the same day, it can take several days to recuperate from a severe episode.

5. At all times relevant, Leone was an eligible employee within the meaning of the FMLA. Leone worked for Lesley University for at least twelve (12) months, worked at least 1250 hours in the twelve (12) month period preceding her medical leave, and Lesley University had fifty (50) or more employees within a seventy-five (75) mile radius of where Leone worked.

6. At all times relevant, Leone was a "qualified" employee within the meaning of the FMLA, entitled to substantive rights and benefits under the Act. As set forth herein, Leone is afflicted with serious health conditions requiring continuing care by a treatment provider.

7. Defendant Lesley University ("Lesley") is a private, non-profit university offering undergraduate and graduate degree programs and non-degree offerings. Lesley employs staff to operate those programs and offerings. It has a principal place of business located in Cambridge, Middlesex County, Massachusetts.

8. At all times relevant, Lesley was a covered employer under the FMLA, M.G.L. c. 151B, and the ADA. Lesley engages in commerce or in an industry or activity affecting

commerce and employs more than fifty (50) employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year at issue.

9. At all times relevant, Leone provided Lesley more than sufficient notice to make it aware that Leone needed FMLA qualifying leave and/or reasonable accommodations for her disabilities. This notice and information invoked the FMLA's individualized notification requirements and an obligation for Lesley to enter into an interactive dialogue to determine appropriate and effective reasonable accommodations under M.G.L. c. 151B and the ADA.

10. On information and belief, Defendant Kathleen Farrell ("Farrell") resides in Massachusetts. At all times relevant, Farrell was Leone's direct supervisor at Lesley; she had the authority to hire and fire Leone and supervised and controlled Leone's work schedules and conditions of employment.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the FMLA and ADA claims, including pursuant to 28 U.S.C. § 1331, and 29 U.S.C. § 2617 and 42 U.S.C. § 2000e-5, respectively.

12. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the State law M.G.L. c. 151B claims which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

13. Personal jurisdiction and venue are appropriately with this Court, including pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391.

14. Defendants are residents of, have an agent or agents, and/or transact their affairs in the Commonwealth of Massachusetts, and the unlawful conduct complained of occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Leone properly exhausted her administrative remedies as required pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5, and M.G.L. c. 151B.

16. Leone filed a Charge of Discrimination ("Charge") with the Massachusetts Commission Against Discrimination ("MCAD") on or about October 7, 2020, dually filed with the Equal Employment Opportunity Commission ("EEOC"), alleging the same discrimination, failure to provide reasonable accommodations, and retaliation in violation of M.G.L. c. 151B and the ADA, that is the subject of this Complaint.

17. On or about February 1, 2021, Leone noticed the MCAD of the removal of her claims to file a private right of action in civil court, thereby contemporaneously also notifying the EEOC of her intent to withdraw her claims from the EEOC.

18. The MCAD dismissed Leone's Charge to pursue her claims in Court on or about February 25, 2021.

19. The EEOC issued Leone her Dismissal and Notice of Rights Letter on or about March 10, 2021, received by Leone on or about March 15, 2021.

## FACTUAL BACKGROUND

20. Leone began working for Lesley on or about December 17, 2018.

21. She was hired as the Associate Director of Systems for the Student Administrative Services/Financial Aid Departments.

22. Farrell, the Director of Systems, Student Administrative Services, was Leone's direct supervisor who had control over the terms and conditions of her employment.

23. Over the course of the first few months of Leone's employment, Farrell and Leone worked well together. Farrell treated Leone as a valuable member of the team and with

dignity and respect. As the months progressed, however, Leone required time off from work to treat and recover from symptoms associated with her disabilities, resulting from flare-ups or episodes with her migraine and vertigo conditions.

24. From very early on, Leone candidly disclosed to Farrell her disabilities and the impact on her life and job when flare-ups or episodes occur. She did so from the first day she requested time off from work and continued to do so each time she experienced symptoms that made her require time off from work.

25. At first Farrell appeared understanding. As time went on, however, Farrell "tired" of having a disabled employee on her staff who needed time off from work. She became hostile toward Leone and started to harass her.

26. Farrell began making cruel and belittling remarks toward Leone, for example: "you have the worst attendance out of anyone in this entire suite."

27. In addition, Farrell began criticizing every action by Leone and unjustifiably espoused every error to be material and catastrophic.

28. She also pressured Leone to stop taking time off from work that she needed while cruelly accusing her of "making up" or "lying about" her medical needs. As examples, Farrell snapped at Leone: "it's pretty ironic that you always have your migraines on Mondays."

29. By late summer or early Fall 2019, Farrell's hostility evolved into such an extensive campaign of harassment that Leone started experiencing a flare-up of her long-standing anxiety disorder. This in turn exacerbated her migraines, and both in turn made her symptoms of vertigo worse and more frequent.

30. Leone explained her worsening conditions to Farrell. When she did so, Farrell did not suggest she meet with human resources to determine if she needed a formal reasonable

accommodation plan or a medical leave. Instead, she ramped up her berating and belittlement and took every step she could to ensure Leone was not successful in her job.

31. Leone discovered she would have access to systems and reports one minute and the next her access removed, or a report she needed to work on suddenly disappeared. Or, in complete opposite, after Leone would be unable to find a report that she used or worked on previously it would suddenly reappear, sometimes with changes she did not make.

32. On information and belief, Farrell hid forms and reports, made these changes, and turned system access on and off to cause Leone anxiety and confusion. Farrell then unjustifiably berated Leone for "errors" and purported performance issues resulting from Farrell's own misconduct. Farrell had access to the reports and systems and was frequently the only person who knew Leone was working on a given report or was responsible for setting who could access or not access certain systems.

33. Farrell also micromanaged Leone to the extreme and used accommodations she requested as ammunition against her. For example, Leone requested to be allowed to work from home when feasible after she experienced a migraine or vertigo episode. Leone explained that while severe episodes could last for days, some episodes resolved within hours. For the latter type of episode, after taking her medication and resting for a while, Leone could perform work by late-afternoon. Her medication and dizziness, however, made her unable to travel to the office.

34. In response, Farrell did not assist Leone to set up a system to work from home or refer her to human resources to request a reasonable accommodation or to explore intermittent or other medical leave entitlements. Instead, Farrell removed her privileges and remote access

when she was out of the office specifically so that she could not work from home at all, even when able to do so.

35. By January 2020, Leone's anxiety was at a level it had not been in years and between that and her migraines and vertigo symptoms she found it more and more difficult to work.

36. On January 21st, Leone submitted a formal complaint of harassment against Farrell to a Lesley Equal Opportunity Representative, Anita Poole-Endsley ("Endsley"). Endsley met with Leone on January 23rd.

37. Endsley informed Leone that she generally dealt with sexual harassment and student complaints. Thus, Endsley transferred her complaint to a different human resources representative for investigation, Susan Titus-Garnier ("Garnier").

38. Endsley further informed Leone that she had the right to request reasonable accommodations and/or a medical leave. This was the first time Leone learned of these available avenues to assist with her disabilities.

39. Also on January 21st, Leone was asked to meet with Farrell and her second level supervisor, Scott Jewell,[1] to discuss purported performance issues. During this meeting, Farrell continued to berate Leone about her attendance without any acknowledgement of the known disability related reasons for it. Leone was asked to begin using certain tools and to participate in additional trainings on report writing and financial aid rules and regulations to purportedly "improve" her performance.

40. On or about January 24, 2020, Leone met with Garnier. She instructed Leone to complete reasonable accommodation paperwork with her doctor and provided her FMLA leave

---

[1] Scott Jewell left Lesley's employment on or about January 24, 2020.

7

paperwork. This was the first time Leone was provided any individualized information about the FMLA by Lesley.

41. Garnier told Leone that she would process her disability/medical leave paperwork as soon as the completed documentation was returned.

42. Leone met with her doctor on or about January 27, 2020, and her doctor determined that she required an immediate medical leave from work for treatment and recovery. Leone's vertigo symptoms were so exacerbated at this time that she had recently fallen and injured her back.

43. Leone submitted her FMLA paperwork and was approved for a FMLA leave for her own serious medical condition/disability treatment and recovery beginning the first week of February.

44. Leone remained out of work on an approved FMLA leave from January 27, 2020 until March 16, 2020.

45. Leone's first day back to work after her FMLA leave was Monday, March 16, 2020.

46. The following day, Tuesday, March 17th, the entire University was requested to work from home due to COVID-19.

47. Also on March 17th, Farrell emailed Leone and instructed that she conduct a data clean-up of Book Advances and to complete it by Thursday, March 19th.

48. Farrell knew the time frame demanded was unreasonable and that Leone would not be able to complete it. Not only was the project itself extensive, but Farrell knew Leone had only the day before returned to work after a six (6) week medical leave and during a pandemic

with just that day implemented work from home parameters.  It was obvious Leone would need an adjustment period.

49.     Farrell intended to and did use her unreasonable timeline as pretextual justification to terminate Leone's employment.

50.     Leone was terminated on March 24, 2020.

51.     Leone's termination occurred two (2) months following her filing a formal complaint of harassment against Farrell and requesting reasonable accommodations (the majority of which time Leone was out of work on an approved medical leave), and just one (1) week after returning from her FMLA leave.

52.     The stated reason for Leone's termination (told to her during the termination call) was that her performance did not improve following her meeting with Farrell and Jewell on January 21st, and that Leone did not used the tools or engage in the training asked of her during that meeting.

53.     The stated reason for Leone's termination is pretextual.  Leone was never given an opportunity to use the tools, engage in training, or otherwise "show improvement."  Leone was out of work on an approved medical leave almost the entire time since the January 21st meeting and had returned one (1) week earlier, in the middle of substantial work changes due to the pandemic.

54.     Farrell systematically engaged in work sabotage and denial of support to purport poor performance due to her animus against Leone resulting from her disabilities and her need for time off from work to treat her disability related symptoms.

55. After Leone complained about Farrell and in conjunction with Leone requesting reasonable accommodations and taking an FMLA leave, Farrell sought to and ensured Leone was terminated.

56. The conduct alleged above constitutes unlawful discrimination and retaliation which ultimately led to Leone's termination.

57. Lesley is strictly liable for the discrimination and retaliation Leone endured by Farrell as she was Leone's direct supervisor.

58. Farrell is individually liable for discrimination and retaliation against Leone. As set forth herein, her actions or failures to act were in deliberate disregard of Leone's rights and with an intent to interfere with the exercise of her rights.

## COUNT I

### (Lesley)

**RETALIATION FOR EXERCISING RIGHTS AFFORDED UNDER THE FMLA**

59. Defendant's conduct, as set forth above, constitutes violations of the FMLA, 29 U.S.C. § 2615, and its attendant regulations.

## COUNT II

### (Lesley)

**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA**

60. Defendant's conduct, as set forth above, constitutes violations of the ADA, 42 U.S.C. § 12112(a), and its attendant regulations.

## COUNT III

### (Lesley)

### RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY UNDER THE ADA

61. Defendant's conduct, as set forth above, constitutes violations of the ADA, 42 U.S.C. § 42203(a), and its attendant regulations.

## COUNT IV

### (All Defendants)

### DISCRIMINATION ON THE BASIS OF HANDICAP IN VIOLATION OF M.G.L. c. 151B

62. Defendants' conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(16).

## COUNT V

### (All Defendants)

### RETALIATION FOR ENGAGING IN PROTECTED ACTIVITIES IN VIOLATION OF M.G.L. c. 151B

63. Defendants' conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(4).

## COUNT VI

### (Farrell)

### INTERFERENCE WITH PROTECTED RIGHTS IN VIOLATION OF M.G.L. c. 151B

64. In the alternate to the above Counts, Defendant Farrell's conduct, as set forth above, constitutes violations of M.G.L. c. 151B, § 4(4A).

## PRAYER FOR RELIEF

WHEREFORE, Leone demands judgment against Defendants and prays that this Honorable Court will enter the following:

1. A declaration that all Defendants willfully retaliated against Leone for exercising or attempting to exercise her rights under the FMLA in a meaningful way, in violation of the FMLA;

2. A declaration that all Defendants discriminated against Leone on the basis of her handicap/disability, failed to provide her effective and appropriate reasonable accommodations, and retaliated against her in violation of the ADA and M.G.L. c. 151B.

3. A declaration that Farrell interfered with Leone's protected rights in violation of M.G.L. c. 151B.

4. To award Leone lost wages in the form of back, front pay, and benefits;

5. To award Leone liquidated damages;

6. To award Leone emotional distress damages;

7. To award Leone punitive damages;

8. To award Leone attorney fees, interest and costs; and

9. To grant Leone other such relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

**PLAINTIFF HEREBY CLAIMS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

|  |  |
|---|---|
|  | Respectfully submitted<br>For the Plaintiff,<br>NINA LEONE,<br>By her attorney,<br><br>/s/ Tara M. Swartz<br><br>_____<br>Tara M. Swartz, BBO# 652600<br>Swartz Law, LLC<br>100 State Street, 9th Floor<br>Boston, MA 02109<br>(617) 871-1500 |
| Dated: May 17, 2021 | tara@tswartzlaw.com |